USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/12/2014

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SCOTT EINIGER,                                        :
                                                      :
                              Plaintiff,              :
                                                      :     1:14-cv-4570-GHW
              -v -                                    :
                                                      :     MEMORANDUM OPINION
CITIGROUP, INC.,                                      :         AND ORDER
                                                      :
                              Defendant.              :
-----------------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

Plaintiff Scott Einiger moves to remand this case to the New York State Supreme Court pursuant to 28 U.S.C. § 1447(c) and requests an award of attorneys' fees and costs incurred as a result of the removal of this case by Defendant Citigroup, Inc. ("Citigroup"). The Court holds that Einiger's unjust enrichment and quantum meruit claims are preempted by the Copyright Act, and that, as a result, they must be dismissed. The Court further holds that Einiger's remaining claims are not preempted by the Copyright Act and are properly raised under state law. Because the Court declines to exercise supplemental jurisdiction over those claims, Einiger's motion to remand is granted in part and all of his claims except for his unjust enrichment and quantum meruit claims are remanded to state court. Einiger's request for an award of attorneys' fees and costs is denied.

I.     Background

According to the allegations in Einiger's complaint, Einiger is an attorney with extensive experience representing physicians in a variety of transactional matters. *See* Dkt. No. 1, Ex. A ("Compl.") ¶ 5. In September 2011, Einiger was introduced to Citigroup by one of its employees for the purpose of proposing a niche marketing program for physicians and other health care providers. *Id.* ¶ 7. Einiger met with Citigroup Senior Vice President David Sheehan, who indicated that he was interested in Einiger's proposed marketing program, but also concerned that the cost of developing it could be in the millions of dollars with no guarantee of success. *Id.* ¶ 9. Einiger

responded to Sheehan's concerns by suggesting that the program be developed on a fixed budget; provided, however, that "at the end of the development stage Citigroup could either license the program and pay a royalty fee[,] . . . purchase the program and materials outright[,] or discontinue the program if Citigroup felt Einiger's contributions were not valuable." *Id.* Sheehan informed Einiger that "if the program was expanded from the beta or developmental stage to one of general adoption his function and payment would be expanded so that he would be fully and fairly compensated . . . ." *Id.* ¶ 11.

Relying on Sheehan's representation, in January 2012, Einiger entered into an agreement with APC Workforce Solutions, LLC a/k/a ZeroChaos (the "ZeroChaos Agreement"), a third-party that temporarily employed Einiger to provide services to Citigroup. *Id.* ¶¶ 10-11. The Agreement provided, in relevant part, as follows:

> [Einiger] has agreed to develop certain unique intellectual capital over the course of [his] assignment at [Citigroup]. Upon completion of the agreed upon term of assignment, [Einiger] will still own all Intellectual Property [that he] created . . . , no matter its form, at which time [Einiger] and [Citigroup] may mutually agree to license such Intellectual Property, transact a sales/purchase agreement of the Intellectual Property, or take no action as between [Einiger] and [Citigroup]. If a sales transaction does not occur between [Einiger] and [Citigroup], [Einiger] will retain all rights and ownership of the Intellectual Property in all its forms.

*See* Dkt. No. 12, Declaration of Kenneth L. Kutner in Support of Motion to Remand ("Kutner Decl."), Ex. B (Agreement) at 10. The Agreement further provided that "ZeroChaos and [Citigroup] shall agree on a billing and payment structure under which [Citigroup] will pay ZeroChaos." *Id.* at 1. Einiger "agreed to accept a steeply discounted [pay] rate and limited his billing submissions with the understanding that if the program was successful he would receive a long term commitment or buyout" and that "Citigroup could simply walk away from the program if its growth and development was not successful." Compl. ¶¶ 14, 19.

In furtherance of developing a marketing program for Citigroup, Einiger subsequently (1) "[a]ttended meetings and made presentations to Citigroup employees and shared his concepts, notes,

ideas, and written materials which were packaged by Citigroup's internal and external marketing teams"; (2) "[o]riginated the concept on how Citigroup could target its marketing to physicians in life cycle segments from those first starting out [to] those who were already established and those who were retired"; (3) "[p]rovided articles and marketing materials which were incorporated into medical associations' electronic and published newsletters thereby expanding the potential client base for the program into the thousands"; (4) "[e]dited and revised materials for the program that were prepared by internal Citigroup employees"; and (5) "[d]eveloped a medical association channel program for Citigroup to coordinate through medical societies in an organized fashion." *Id.* ¶ 25. Over the course of the next year and a half, Citigroup "documented all of Einiger's ideas, concepts and information, wrote up training materials, made presentations, revised and redrafted materials provided by Citibank employees and created a tracking protocol." *Id.* ¶ 21.

Ultimately, the marketing program that Einiger developed became known and registered as Citi on Call. *Id.* ¶ 22. The Citi on Call program was successful and was expanded beyond the beta or developmental stage regionally and then nationally. *Id.* ¶ 23. Nonetheless, upon the completion of Einiger's assignment, Citigroup did not license or purchase the intellectual property that Einiger had created in developing the program. *Id.* ¶ 1.

## II.   Procedural History

In May 2014, Einiger sued Citigroup in New York Supreme Court, New York County, raising claims for breach of contract and breach of the implied covenant of good faith and fair dealing, or, in the alternative, for promissory estoppel,[1] unjust enrichment, and quantum meruit. *Id.*

---

[1] Einiger also purported to raise a claim for equitable estoppel, either in addition to or in lieu of his claim for promissory estoppel. *See* Compl. ¶ 68. However, the weight of authority suggests that equitable estoppel is not a cause of action under New York law. *See, e.g., Jain v. T&C Holding Inc.*, No. 10 Civ. 1006(RMB), 2011 WL 814659, at *7 (S.D.N.Y. Mar. 3, 2011) ("[T]here is no distinct equitable estoppel cause of action under New York law; rather, it is an affirmative defense." (internal quotation marks omitted)); 57 N .Y. Jur.2d Estoppel, Ratification, and Waiver § 5 (2011) ("Equitable estoppel is not a cause of action or a defense; it is, rather, an equitable bar to the assertion of a defense or claim . . . [that] is invoked to prohibit a party from engaging in certain conduct and cannot be used as the basis to recover money damages."). To the extent Einiger intended to raise equitable estoppel as a defense or a bar to the assertion of a defense,

¶¶ 35-87.  Einiger also raised a fraudulent misrepresentation claim.  *Id.* ¶¶ 88-99.  Einiger's contractual claims are based on his assertion that, by appropriating his intellectual property for use in the Citi on Call marketing program without licensing or purchasing that property, Citigroup breached the express or implied terms of the ZeroChaos Agreement.  *Id.* ¶¶ 35-66.  Similarly, Einiger's promissory estoppel claim stems from Citigroup's alleged failure to abide by its "clear and unambiguous promise to compensate Einiger for the intellectual property he created on its behalf after the Citi on Call program went beyond the pilot stage." *Id.* ¶ 68.  Einiger's unjust enrichment claim is based on his assertions that, "by utilizing the intellectual property created by [Einiger], Citigroup has received or stands to receive tens of millions of dollars in income and profit from business generated from the program," and that "[i]t would be inequitable to allow Citigroup to retain all such income and profit without fully compensating [Einiger] for his work, labor, services, ideas, concepts, notes, training, presentations, and intellectual property." *Id.* ¶¶ 79-80.  Finally, Einiger's quantum meruit claim is based principally on his assertion that he provided valuable services to Citigroup in good faith and with the expectation of compensation. *Id.* ¶¶ 83-85.

In June 2014, Citigroup timely removed the case to this Court. *See* Dkt. No. 1. Citigroup relied on 28 U.S.C. § 1441(a), asserting that this Court has original jurisdiction over Einiger's complaint under the Copyright Act, 17 U.S.C. § 101 *et seq. Id.* ¶ 5.  According to Citigroup, Einiger's claims are preempted by the Copyright Act because they "amount to nothing more than allegations that [Einiger] owned certain intellectual property within the subject matter of copyright law, and that Citigroup has made and/or is making unauthorized use of that intellectual property by reproducing, distributing, and/or displaying it." *Id.* ¶ 11.

Einiger now moves to remand this case to state court.  Einiger principally argues that his breach of contract claim is not preempted by the Copyright Act because that claim is "predicated

---

his reliance on this doctrine is not relevant the Court's analysis as to whether his causes of action are precluded by the Copyright Act.

upon Citigroup's express promise to pay for [his intellectual property] if it chose to use [that property]," and the Second Circuit has held that "a claim for a breach of contract including a promise to pay is qualitatively different from a suit to vindicate a right included in the Copyright Act and is not subject to preemption." Dkt. No. 14, Plaintiff's Memorandum of Law in Support of Motion to Remand ("Pl. Mem.") at 5-6 (citing *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424 (2d Cir. 2012)). Einiger does not meaningfully address whether his quasi-contractual claims for promissory estoppel, unjust enrichment, and quantum meruit are preempted by the Copyright Act.[2]

In opposition to Einiger's motion, Citigroup contends that Einiger's quasi-contractual claims are preempted by the Copyright Act because they are not qualitatively different from copyright infringement claims, and that, if the Court agrees with this contention, it need not decide whether Einiger's remaining claims are preempted because it may exercise supplemental jurisdiction over those claims. *See* Dkt. No. 15, Defendant Citigroup, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion to Remand ("Def. Mem.") at 6-11. Citigroup further argues that, in any event, Einiger's breach of contract clam is preempted by the Copyright Act because the ZeroChaos Agreement "simply allocates intellectual property ownership rights among the parties" and "contains no *promise* to pay" for Einiger's intellectual property. *Id.* at 11.

### III.   Analysis

Following the removal of an action to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). Thus, on a

---

[2] Einiger fails to remedy this shortcoming in his reply brief, in which he summarily asserts that his quasi- or non-contractual claims do not satisfy the predicates necessary for preemption by the Copyright Act. *See* Dkt. No. 16, Plaintiff's Reply Memorandum of Law in Further Support of Motion to Remand ("Pl. Reply") at 4.

plaintiff's motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." *Cal. Pub. Employees' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (internal quotation marks omitted). Additionally, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).

A defendant is entitled to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Where, as here, neither party has invoked diversity jurisdiction, removal must be based on the existence of federal question jurisdiction. *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998). "Under the complete preemption doctrine, certain federal statutes are construed to have such extraordinary preemptive force that state-law claims coming with the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 423 (2d Cir. 2006) (internal quotation marks omitted). The Second Circuit has held that the Copyright Act is one such statute. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). The Copyright Act completely preempts a state law claim only if "(i) the work at issue 'come[s] within the subject matter of copyright' [the 'subject matter requirement'] and (ii) the right being asserted is 'equivalent to any of the exclusive rights within the general scope of copyright [the 'equivalency requirement'].'" *Forest Park*, 683 F.3d at 429 (quoting 17 U.S.C. § 301(b)).

### A.    The Subject Matter Requirement

Under the subject matter requirement, "[c]opyright protection exists for 'original works of authorship fixed in any tangible medium of expression,' but does not extend to an 'idea, . . . regardless of the form in which it is described, explained, illustrated, or embodied.'" *Id.* (quoting 17 U.S.C. § 102(a), (b)). The Second Circuit has nonetheless held that "works may fall within the

subject matter of copyright, and thus be subject to preemption, even if they contain material that is uncopyrightable under section 102." *Id.*; *see also Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97 CIV. 7763(TPG), 1999 WL 179603, at *2 (S.D.N.Y. Mar. 31, 1999) ("It is well established . . . that the scope of *preemption* under § 301 is not the same as the scope of copyright *protection*, and the former is in fact broader than the latter." (emphasis in original)); *Panizza v. Mattel, Inc.*, No. 02 CV 7722(GBD), 2003 WL 22251317, at *3 (S.D.N.Y. Sept. 30, 2003) ("[T]he preemptive reach of the Copyright Act encompasses state law claims concerning uncopyrightable material."). "Were this not so, states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of material not meeting federal statutory standards." *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997).

Here, Einiger alleges generally that he created and shared with Citigroup employees various "written materials" describing his proposal for a marketing program targeted towards health care providers. *See, e.g.,* Compl. ¶¶ 21, 25(e), 27. At least for preemption purposes, Einiger's written expressions of his ideas for a marketing program are encompassed by the subject matter of the Copyright Act.[3] *See* 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ."); *cf. Katz Dochrermann & Epstein*, 1999 WL 179603, at *2-3 (holding that the written embodiments of an advertising campaign fell within the subject matter of the Copyright Act for preemption purposes). Although Einiger also alleges that he created and shared various "ideas" and "concepts," *see, e.g.,* Compl. ¶ 25(b), such uncopyrightable elements do not remove the intellectual property at issue from the broad preemptive reach of the Copyright Act, *see Briarpatch*, 373 F.3d at 306 ("To the extent that the project includes non-copyrightable material, such as ideas, these are not sufficient to remove it from

---

[3] Einiger has not meaningfully challenged this conclusion in his motion papers. While his reply brief contains the argument heading "Einiger['s] Claims Are Not Within the Subject Matter of Copyright Law," he proceeds to address the equivalency requirement under that heading. *See* Pl. Reply at 4-6.

the broad ambit of the [Copyright Act's] subject matter categories."); *Panizza*, 2003 WL 22251317, at *3 (collecting cases for the proposition that, "for purposes of preemption, the Copyright Act applies with equal force to ideas").

### B.   The Equivalency Requirement

With respect to the equivalency requirement, the Copyright Act gives copyright owners the exclusive rights to reproduce, perform, distribute, display, or prepare derivative versions of a copyrighted work.  *See* 17 U.S.C. § 106.  "A state law right is equivalent to one of the exclusive rights of copyright if it may be abridged by an act which, in and of itself, would infringe one of [those] exclusive rights."  *Forest Park*, 683 F.3d at 430 (internal quotation marks omitted).  "But if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, there is no preemption."  *Id.* (internal quotation marks omitted).

#### 1.   Contractual Claims

In *Forest Park*, the Second Circuit held that "[a] claim for breach of a contract including a promise to pay [for the use of copyrightable material] is qualitatively different from a suit to vindicate a right included in the Copyright Act and is not subject to preemption."  *Id.* at 433; *see also id.* at 431 ("[T]he Copyright Act does not provide an express right for the copyright owner to receive payment for the use of a work.  It simply gives the copyright owner the right to prevent distribution, copying, or the creation of derivative works . . . .").  The Court agrees with Einiger that this holding controls here.  Einiger claims that Citigroup breached the ZeroChaos Agreement by using the intellectual property that he created without paying for it through licensure or purchase.  *See* Compl. ¶¶ 35-49.  Such a breach of contract claim is not equivalent to a claim encompassed by the Copyright Act under the clear holding in *Forest Park*.

To be sure, "preemption cannot be avoided simply by labeling a claim 'breach of contract,'" and "[a] plaintiff must actually allege the elements of an enforceable contract . . . , including offer,

acceptance, and consideration, in addition to adequately alleging the defendant's breach of the contract." *Forest Park*, 683 F.3d at 432.  In this case, however, Einiger has adequately alleged the essential elements of a breach of contract claim.  *See* Compl. ¶¶ 12-19, 36-49.

The Court acknowledges that the portion of the ZeroChaos Agreement that allegedly obligated Citigroup to pay for Einiger's intellectual property is, at best, inartfully drafted as a means of creating such an obligation.  The Agreement specifically provided that, "[u]pon completion of the agreed upon term of assignment, [Einiger] will still own all Intellectual Property [that he] created . . . , no matter its form, at which time [Einiger] and [Citigroup] may mutually agree to license such Intellectual Property, transact a sales/purchase agreement of the Intellectual Property, or take no action as between [Einiger] and [Citigroup]."  Kutner Decl., Ex. B at 10.  Not unreasonably, Citigroup argues that this provision did not, in fact, obligate it to pay Einiger for his intellectual property, even if it continued to use that property upon the completion of his assignment.[4]  *See* Def. Mem. at 11-17.  Einiger's response—which also is not unreasonable—is that this provision would be rendered meaningless if it did not at least implicitly obligate Citigroup to license or purchase his intellectual property in the event that it continued to use that property upon the completion of his assignment.  *See* Pl. Reply at 6-7.  In deciding the instant motion to remand, however, the Court is not required to resolve this dispute, which goes to the merits of Einiger's breach of contract claim.  The Court is required to conclude only that Einiger has sufficiently pled the essential elements of a breach of contract claim, and that Einiger is claiming—rightly or wrongly—that the breach at issue involved "a promise to pay," *Forest Park*, 683 F.3d at 433.  In other words, this dispute turns on the interpretation and enforceability of the parties' agreement, which is a matter of state contract law,

---

[4] More generally, it is not clear to the Court that the ZeroChaos Agreement is binding on Citigroup at all, as there is no indication that it was a party to that Agreement.  *See, e.g., Malmsteen v. Universal Music Group, Inc.*, 940 F.Supp.2d 123, 135-36 (S.D.N.Y. 2013) ("A contract cannot bind a non-party unless the contract was signed by the party's agent, the contract was assigned to the party, . . . the signatory is in fact the alter ego of the party[, or] . . . a non-party manifests an intent to be bound by the contract." (citation and internal quotation marks omitted)).  For the reasons indicated below, however, the Court is not required to resolve this merits issue in deciding Einiger's motion to remand.

and does not change the essential nature of Einiger's breach of contract claim. Citigroup thus has not demonstrated that Einiger's breach of contract claim is equivalent to a claim seeking to vindicate a right included in the Copyright Act.

The above analysis is equally applicable to Einiger's claim for breach of the implied covenant and fair dealing, since there is no basis for drawing a distinction between an explicit and implicit promise to pay in this context. Indeed, the contract at issue in *Forest Park* involved an implied promise to pay the plaintiff for the use of its ideas, and the Second Circuit held that "there is no difference for preemption purposes between an express contract and an implied-in-fact contract." 683 F.3d at 432. Accordingly, Einiger's contractual claims are not preempted by the Copyright Act.

### 2. Promissory Estoppel Claim

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). In this case, like his breach of contract claim, Einiger's promissory estoppel claim is premised in part on Citigroup's alleged "promise to compensate Einiger for the intellectual property he created on its behalf after the Citi on Call program went beyond the pilot stage." Compl. ¶ 68. As a result, Einiger's promissory estoppel claim involves an "extra element"—a promise to pay—that distinguishes it from a claim under the Copyright Act for preemption purposes for the reasons indicated above. Although courts in this Circuit do not appear to have considered this issue, other courts analyzing this question have reached the same conclusion. *See, e.g., Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1128 (N.D. Cal. 2001) (concluding for preemption purposes that the plaintiff's promissory estoppel claims "involve an additional element—a promise to pay the plaintiff for his software—that qualitatively changes the nature of the claims so that they are not equivalent to a claim for copyright infringement involving only a promise not to use the program"). Accordingly, given that he has sufficiently pled the essential elements of a

promissory estoppel claim, *see* Compl. ¶¶ 68-77, Einiger's promissory estoppel claim is not preempted by the Copyright Act.

### 3. Unjust Enrichment and Quantum Meruit Claims

Under New York law, unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). This is because "quantum meruit and unjust enrichment are not separate causes of action; rather, unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract." *Di Simone v. CN Plumbing, Inc.*, No. 13-CV-5088, 2014 WL 1281728, at *6 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted). "To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered . . . ." *Id.* at *5 (internal quotation marks omitted). "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson*, 418 F.3d at 175 (internal quotation marks omitted).

"The overwhelming majority of courts in this circuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." *Panizza*, 2003 WL 22251317, at *4 (internal quotation marks omitted); *accord Ardis Health, LLC v. Nankivell*, No. 11 Civ. 5013(NRB), 2012 WL 5290326, at *10 (S.D.N.Y. Oct. 23, 2012) ("Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims related to the use of copyrighted material are generally preempted." (internal quotation marks omitted)). The element of enrichment, while not required to establish copyright infringement, does

11

not "go[ ] far enough to make [an] unjust enrichment claim qualitatively different from a copyright infringement claim." *Briarpatch*, 373 F.3d at 306; *see also id.* at 306-07 (quoting with approval the principle that "[a] state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter" (quoting 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][g] (2003)).

Here, the gravamen of Einiger's unjust enrichment and quantum meruit claims is that, in establishing the Citi on Call program, Citigroup unjustly benefitted from the unauthorized use of his intellectual property. *See, e.g.,* Compl. ¶ 79 ("Plaintiff is entitled to recover under the theory of unjust enrichment [because] by using the intellectual property created by Plaintiff Citigroup has received or stands to receive tens of millions of dollars in income and profit from business generated from the program."), ¶ 83 ("Plaintiff is entitled to recover under the theory of quantum meruit because Plaintiff in good faith performed valuable services to Citigroup including providing Citigroup with useful and necessary proprietary information to enable Citigroup to market its programs to others."). Such claims are not "qualitatively different" from a copyright infringement claim for preemption purposes. *See, e.g., Panizza*, 2003 WL 22251317, at *4 (reaching the same conclusion where the plaintiff's unjust enrichment claim "solely concern[ed] the benefit defendant allegedly received by using plaintiff's ideas and related materials without her permission or authorization to do so"); *Ardis Health*, 2012 WL 5290326, at *10 (reaching a similar conclusion with respect to the plaintiff's quantum meruit claim). In light of this conclusion and the Court's prior conclusion that the intellectual property at issue is within the scope of the subject matter of federal copyright law for preemption purposes, Einiger's unjust enrichment and quantum meruit claims are preempted by the Copyright Act.

It follows from the above conclusion that Einiger's complaint raises a federal question and that this Court has supplemental jurisdiction over his non-preempted state law claims. *See* 28 U.S.C.

§ 1367(a). It also follows from the above conclusion that Einiger's unjust enrichment and quantum meruit claims must be dismissed. In *Briarpatch*, the Second Circuit held that, once a district court determines that a state law claim is completely preempted by federal law, the court may not proceed to analyze whether the plaintiff can establish his claim under federal law. *See* 373 F.3d at 308-09. The court must instead "dismiss the claim for failing to state a cause of action." *Id.* at 309. Accordingly, Einiger's unjust enrichment and quantum meruit claims are *sua sponte* dismissed with prejudice on the ground that they are completely preempted by the Copyright Act.

### C. Supplemental Jurisdiction

Having dismissed the sole claims giving rise to a basis for federal jurisdiction in this case, the Court has discretion under 28 U.S.C. § 1367(c) to either retain or decline to retain jurisdiction over Einiger's remaining state law claims. *See Osborn v. Haley*, 549 U.S. 225, 245 (2007). A "federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7. Weighing these factors, the Court declines to exercise supplemental jurisdiction over Einiger's remaining state law claims.

Accordingly, Einiger's motion to remand is granted in part and all of his claims except for his unjust enrichment and quantum meruit claims are remanded to state court.[5] *See id.* at 357 ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon

---

[5] It is undisputed that Einiger's fraudulent misrepresentation claim, which was not discussed above, is not preempted by the Copyright Act. The Court expresses no opinion as to whether Einiger has pled sufficient facts to support a fraudulent misrepresentation claim.

a proper determination that retaining jurisdiction over the case would be inappropriate."). Einiger's request for an award of attorneys' fees and costs incurred as a result of Citigroup's removal of this case is denied, as there was an objectively reasonable basis for removal for the reasons indicated above. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.").

**IV.     Conclusion**

For the foregoing reasons, Einiger's unjust enrichment and quantum meruit claims are dismissed, and Einiger's motion to remand is granted to the extent that his remaining claims are remanded to the Supreme Court of the State of New York, New York County. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: September 11, 2014  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge